## Rusterholtz Estate (No. 2)

*Ralph S. Snyder*, Deputy Attorney General, and *James G. Hanes*, for exceptants.

*James P. Bryan*, contra.

ROBERTS, P. J., June 27, 1961.—Exceptions to our adjudication of January 19, 1961 (Rusterholtz Estate (No. 1), 25 D. & C. 2d 80) were filed by the Commonwealth. It is contended that the court erred in holding that the sum paid, $4,500 by the son and daughter, residuary beneficiaries under their mother's will, to decedent's friend, in settlement of a contest involving a $20,000 gift recited in an unprobated writing, purporting to be a codicil, was not taxable at the collateral rate.

The facts are not in controversy. Transfer inheritance tax at the appropriate rate was paid on the

taxable value of decedent's property passing under her will. It is clear from the record that the settlement was between decedent's children and their mother's friend. Decedent's husband-executor, a specific legatee, was not either individually or as fiduciary a party to the settlement agreement. It is likewise undisputed that payment of the agreed amount was made by personal checks of decedent's son and daughter, directly to the recipient.

In our prior adjudication, after examination of the applicable transfer inheritance tax provisions (Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301) and the undisputed facts, we concluded that the payment did not constitute a transfer of decedent's property under the act. We there said (25 D. & C. 2d 82) :

"The sum was paid directly by decedent's son and daughter to the recipient from their personal funds, not as a transfer of property from their mother's estate, but in compromise to avoid litigation in connection with her will. This expenditure was for 'the purchase of peace' in settlement of the doubtful right advanced. The recipient took nothing under decedent's will, and the sum received is not subject to this tax. . . .

"In the absence of statutory or decisional authority, there is no legal basis for imposing the tax which the Commonwealth asserts, unless the whole transaction is collusive or is otherwise lacking in good faith or is designed to deprive the Commonwealth of tax properly due. No such situation exists here. It is not contended or even suggested that this is not a bona fide compromise and settlement, nor is there anything in the record to indicate that the compromise payment was employed as a device or technique to avoid tax."

The Commonwealth vigorously contends that the compromise payment is subject to the collateral tax rate on the theory that the compromise payment is, in effect, an actual distribution under decedent's will

and that the payment occurred "because of her status as a beneficiary mentioned in the codicil. It was her status derived from the decedent herself which occasioned whatever she received."

We are unable to agree with this contention because it is predicated on the validity of the unprobated codicil, which was not established. It likewise proceeds on the assumption that the payment in question was a transfer of decedent's property "by will" whereas the expenditure was for the "purchase of peace" in the settlement of the doubtful claim advanced. The Commonwealth relies on Bute Estate, 355 Pa. 170. There a collateral beneficiary renounced his legacy; the property thereupon passed to his wife, a direct benefiicary. The Commonwealth sought to tax the renounced gift at the higher rate; such assessment was not permitted. The court held that "the succession becomes taxable only in accordance with the ultimate devolution of the property" and the direct tax rate was applied. This holding governs succession or devolution of decedent's property. However, the instant case, in our view, is clearly not one of succession or devolution of decedent's property. It is rather the payment by decedent's son and daughter, as individuals and in good faith, of a sum of money to a stranger, to achieve a settlement. The parties to the accord are individuals who acted for themselves. The substance of the agreement deals with their individual rights; no right or obligation of the estate or asset of decedent is involved. No cause of action is created for or against the estate, as a result of the compromise agreement. It seems clear that what the parties to the compromise desired and did achieve is a settlement of their individual differences. The absence of a showing of collusion or design to evade tax establishes the nature of the transaction as a bona fide compromise rather than a tax evasion scheme. This is not a dis-

tribution of decedent's estate. Here, as in Hawley's Estate, 214 Pa. 525, 528," . . . money paid in good faith in compromise of threatened litigation is not subject to tax."

By the specific terms of the statute itself, tax is imposed only upon the transfer of property from a decedent "by will or by the intestate laws. . . ." Here, there is no taxable transfer under the provisions of the statute. The recipient is neither heir nor next of kin of decedent, nor legatee or devisee under her will. We find nothing in the applicable statute which makes the payment in question taxable. This result is in harmony with the well-settled principle that "Acts imposing a tax must be strictly construed against the Commonwealth and all reasonable doubt must be resolved in favor of the taxpayer": Loeb Estate, 400 Pa. 368, 372. See also Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558(3). Were we to hold otherwise we would, in effect, be extending or enlarging the language of the act to include as taxable the compromise payment. This we are without authority to do. Apparently section 407 of Proposed Inheritance and Estate Tax Act of 1959 [1] was intended to accomplish that objective. This taxable result will apparently obtain in the future, in view of the recent

---

[1] The proposed act provided: "In the case of a compromise of a dispute regarding rights and interests in the decedent's estate, made in good faith, the tax shall be computed as though the persons so receiving distribution were originally entitled thereto as transferees of the property received in the compromise, conditioned upon an adjudication or decree of distribution expressly confirming distribution to such distributees. In such case, notice of the filing of the account and of its call for audit or confirmation shall include notice to the Department of Revenue."

Section 407 of the Inheritance and Estate Tax Act of 1961, approved June 15, 1961, as Act No. 207, is in the same language, except that it substitutes "of transferees" in lieu of "in the decedent's estate." The act is effective January 1, 1962.

enactment of the Inheritance and Estate Tax Act of 1961 (approved by the Governor on June 15, 1961, and applicable to estates of decedents dying on or after January 1, 1962) which makes compromise payments taxable "as though the persons so receiving distribution were originally entitled thereto as transferees of the property received in the compromise."

Spirited argument for imposition of the collateral rate is based on the possibility of loss of tax revenues as a result of the holding here. Concern is expressed in exceptant's brief "because we believe that the rule of this court in its opinion places the ultimate authority to assess and compute taxes in the taxpayer." Likewise, it is argued that the failure to tax, at collateral rate, the compromise payment, permits "a contrived plan which is designed to avoid tax or one permitting such avoidance. . . . We submit there is inherent in the rule a perfect blueprint for tax avoidance." Exceptant also contends "Whether this taxpayer can be accused of tax avoidance motive is unimportant. Rather, it becomes apparent that the rule would permit perfect though legally justifiable tax avoidance and even evasion. In no case would there be any more evidence of bona fides or the lack of it than in this case. To say that the rule is inappropriate where there is an intent to evade is therefore rendered meaningless."

While we recognize the earnestness and zeal with which these contentions are advanced, we are not satisfied they are grounds here for supporting the holding urged. They may perhaps be more appropriate for legislative considerations.[2] Irrespective of how persuasive we may regard the concern voiced, neverthe-

---

[2] Perhaps these and other considerations led to the recent adoption by the legislature of section 407 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373.

less, in the absence of specific statutory mandate or decisional authority we are without legal power to reach the tax result the Commonwealth seeks. Perhaps it may not be inappropriate to observe that since our determination is necessarily limited to the precise factual situation before us, exceptant's fears as to the precedent effect of this adjudication may not materialize. This appears now to be particularly so, since the adoption of section 407 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373.

Good faith and the absence of collusion, in this controversy, is an important factor in arriving at a proper conclusion, just as it is in other aspects of the law involving private and governmental litigants. We may not, therefore, disregard the bona fides of the transaction and predicate a result on its absence. The legal significance of this factor is emphasized in Zipperlein Estate, 367 Pa. 622, 624, where, in referring to Bute Estate, supra, it is said:

"In that case, . . . the renunciation of the legacy was bona fide and not a part of any palpably evasive scheme. . . ."

In Hawley's Estate, supra, the Commonwealth claimed collateral inheritance tax on money paid by the heirs to persons named as beneficiaries in a writing purporting to be a will, which was not admitted to probate. In discussing the allegation that the controversy as to the validity of the will was not collusive but real, and that the compromise agreement was made in good faith to avoid a contest and not for the purpose of evading the payment of collateral inheritance tax, the court said, at page 528:

"There is nothing in the testimony nor in the conduct of the parties to the agreement that raises a doubt of the truth of these averments. In the decision of the case they must be considered as established facts."

This comment of the Supreme Court is equally applicable here.

It seems clear to us that the Commonwealth is adequately protected against the employment of collusive and evasive tax schemes to deprive it of revenue legally due. There is neither authority nor necessity for treating the instant bona fide transaction as though it were not so. "No mere device intended to evade the payment of tax due the commonwealth can be effective. Courts look beyond the form of any arrangement by which the commonwealth is deprived of a tax to its substance to ascertain its real purpose. An agreement to set aside a will and to make distribution in accordance with its provisions will not relieve legacies passing to collaterals from tax. Such an agreement is evidently collusive. But money paid in good faith in compromise of threatened litigation is not subject to tax": Hawley's Estate, supra, 527.

We have carefully considered the oral arguments of counsel and the written briefs submitted, and, after full and careful review of the entire matter, we are of the opinion that the exceptions are without merit. We are, therefore, entering the following:

### Decree

And now, to-wit, June 27, 1961, the exceptions of the Commonwealth of Pennsylvania, dated January 30, 1961, to the adjudication of January 19, 1961, having come on to be heard by the court, and we being of the opinion that the findings and disposition in the adjudication of January 19, 1961, are proper and should not be disturbed, it is ordered, adjudged and decreed as follows:

1. The exceptions heretofore filed by the Commonwealth, dated January 30, 1961, be and the same are hereby dismissed; and

2. The adjudication dated January 19, 1961, is

hereby ratified and confirmed absolutely, and the decree dated January 19, 1961, is hereby adopted and entered as the final decree of the court in this proceeding.